Good morning, Your Honors. I'm David Eisenberg. Excuse me. I represent Dean James Young, appellant with co-defendant Sheila Young, who is represented by Mark Page, who is present at counsel table. Now, are you both going to argue or just one of you? Just me, Your Honor. And if the Court has a question, I will try to answer it if it pertains specifically to Sheila. Otherwise, I'd have to defer to my co-counsel, Mr. Page. May it please the Court, Your Honor, Your Honors. This case involves an Allen charge. It's clear from the record. The position of the appellants is that it was inherently coercive because under the circumstances in which it was given, one, it was premature, and two, at the time that it was given, which was very early on in the case, not only was it inherently coercive because it was premature, but the facts and the record subsequent to when it was given will show that, indeed, it was premature. I have to set the circumstances to some extent behind what happened in order to indicate to the Court that this was a case of some complexity, which means that the charge itself was even more coercive because, unlike the garden variety case that you might see, this case had – was quite involved, so that when it was given, the charge was given early on, it was unfair to the defendants. And here is my summation of the situation below. Five trial days plus a sixth day for summation. Seven hours a day, which is calculated by simply looking at the time markers in the record, for trial itself, that's 35 hours. Four hours of summation plus jury charge, 39 hours before the jury got the case. There were 19 witnesses called by the government. There were three witnesses called by the defense, 22 witnesses. The issues in the case were not easy to muster for a lay jury. There was a charge of intent to deceive – I'm sorry, conspiracy with intent to commit fraud against the government. Eleven charges of false statements. So inherently fraud, which is sometimes hard for us to understand as prosecutors and defense counsel, I'll just include myself, is nonetheless for a lay jury inherently difficult. Instruction number 25 talks about the theory of the case, which has to do with so-called – not so-called, it's on the form – 1099 OIDs. In effect, what this is, is the theory behind take a tax deduction so long as you understand that the government, if you want to believe this, will take an interest on the basis of bank deposits that you may have in your account. Now, for a lay jury, that's not so much an indication of on its face totally bogus. So that's why I think to some extent – I think to some extent, it's an indication of what happened during the jury deliberations. We get a note from the jury foreman that says we're hung. What's the procedure? Right. That's after, what, three and a half hours? That is approximately – the jury got the case at around 1 o'clock in the afternoon, or they retired about 12.50. The note came back at approximately 4 o'clock, so let's say three hours. Three hours plus, okay. Okay. And at that point, the judge gives the Allen charge. He does, Your Honor. As to one of the two youngs, fine. As to the other, it says it's premature. Sheila – yes, Your Honor. Sheila said no objection. And as to the second Allen charge, I mean, I read both the charge in the original instruction, which I think is a version of Allen. Yes, Your Honor. Then the second sort of true Allen charge that's made after the jury foreman comes back and says we're hung, both of them are very clear in saying, you know, have a discussion, think about whether you're wrong, but don't abandon your own conscience. And then after this jury – the Allen charge is given, how long did the jury deliberate? Well, the jury went home shortly after that charge. I believe they left around 4.30. They came back the next day. I believe they started deliberations probably a quarter to 9 or 9 o'clock. The record really doesn't show that. There's a note that came back, had nothing to do with being deadlocked. That was about, oh, I think 10.30 or so. Then the jury came back with a verdict around 11.45. So – excuse me. So what Your Honor may be getting at is how much time went by beforehand, how much time went by afterwards, because that is an indicia of whether there was coercion. My point is, Your Honor, that after three hours of deliberation in a complex case, first you have to go back and look at that note. Our premise is the Allen charge shouldn't have been given in the first place because the note doesn't say we're hung in the sense that we cannot go any further in this. Indeed, the note says in its second paragraph, what we'd like to do is go home, apparently tired, whatever, and we're going to come back the next day and continue deliberations. What is the process for this? So I believe, and certainly the prosecutor saw some ambiguity in whether an Allen charge ought to be given. I believe what should have happened there is the judge simply saying, all right, ladies and gentlemen of the jury, we understand that you want to come back tomorrow. 430 is the breaking time. Come back tomorrow and continue your deliberations. So let me ask you, how do you distinguish Steele from the instant case? In Steele, the jury says we have not been able to reach a unanimous verdict. How do we proceed from this point forward? In our case, we have at this time we're hung. At what point and what is the process for hanging a jury? In this case, Your Honor, they don't say that we're unable to proceed. They simply say we want to come back tomorrow. In this case, there isn't, I don't think there's an indication of a vote. I believe the way I read that note is it simply says we're hung. In other words, we don't really know what happened. Oftentimes at the beginning of a trial, jury may go back, they may take a preliminary vote, and they find that this is not easily going to be disposed of. But my point to Your Honor is there was no vote. At least we don't see that on the record. The trial judge did not inquire as well he should not have. So in this case then, one difference, Your Honor, might be, and I'm going to pick up on a theme from Judge Fletcher, there are cases which say that if you're going to do an Allen charge and you do it a second time, that's even more coercive because now you're telling them that you really want to get something done. In that first charge, which is Model Charge 7.1, there are four criteria in that charge which can be compared to the charge in the Allen charge that was given in 7.7. So what I'm saying is this is really the second Allen charge in the case, not the first. For example, 7.1, duty to deliberate says in the second paragraph, you will then discuss the case with your fellow jurors to reach agreement. If you can do so, your verdict, whether guilty or not guilty, must be unanimous. In the first sentence of the second paragraph under 707, as jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. I admit that's a little bit stronger, but the point is still the same. In the third paragraph of 7.1, the standard jury instruction given in this case, each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to views of your fellow jurors. That's also in the second paragraph under deadlock jury, 707. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the fellow jurors. Now, you're down to about a minute. Would you like to save some time? Yes, I would, Your Honor. Okay. Thank you. And my point is that this was inherently coercive. After only three hours we got the point. So let's hear from the other side, and then you can rebut. Mr. Napp. Good morning. May it please the Court. My name is Jim Napp, and I represent the United States. An Allen instruction is proper in all cases except those where it's clear from the record that it was coercive. And here there are four reasons why the record shows this was not coercive. The first is this was a neutral form of the charge. And this Court's decisions have noted that, you know, the model instruction, of course, is disfavored, and it's more favored than other instructions that have not been preferred in the past, such as ones that, obviously, in Jenkins' Supreme Court case where the district court said you have to get a unanimous verdict, you know, that's not good. Here there was no suggestion that they had to reach a unanimous verdict. It was just let's continue to talk this through. Similarly, there was no suggestion in this case, unlike even in Beatty where the conviction was affirmed, there was no suggestion in this instruction that the minority jurors should reexamine their own views in light of the majority or consider whether their  seen as singling out certain jurors, and that didn't happen here. So there's a neutral form of the charge. The second reason why this was not coercive is that there was no coercion on the holdouts. And there was no vote count disclosed to the judge. There was no evidence in the record of individual jurors trying to coerce other ones or complaining about other jurors. So that's just a – there's no evidence of coercion here. The third reason is there was a delay after the Allen charge. And cases have cited this with approval. In some cases, people come right back with a guilty verdict after an Allen charge. And as the Supreme Court noted in Lowenfield, that can look bad. Now, Lowenfield came back after 30 minutes, but they still affirmed the conviction because all the remaining context showed that it wasn't coerced. But here we know that not only was there about equal time before and after the charge, but there's an intervening overnight break to sort of cool the temperature. So that's another strong factor showing that there was no coercion here. And the fourth reason why there's no coercion here is because we can tell from the record that the verdict was based on a reexamination of the evidence. There was a second juror note asking to see some of the summaries, some of the charts that were discussed during the trial. And that shows that they were reaching a decision not based on coercion from the judge's instruction, but rather from a reexamination of the evidence and further deliberation. Let me ask you. Does that support the argument that the instruction given by the court was premature, that just because the jury said that they were hung, you really couldn't just take those three words in a vacuum, or we are hung, without considering the additional language? The jurors are talking about being done today at 430 and coming back tomorrow at 9 a.m. And so to the extent that they already contemplated coming back, that they weren't really hung in the sense that we've reached an impasse, that in view of the fact that only three hours had passed of deliberations, that maybe the judge got it wrong. How do you respond to that? I think it's a good point, Your Honor. But there's a couple reasons why this was not premature. The first is, as Your Honor pointed out in Steele, the language is very similar. In fact, it's less strong than what we have here. And, of course, in Beatty it notes that even if the instruction was premature, it doesn't matter unless there's also coercion. But the other point that I would make on that is there's a suggestion in defense counsel's briefs that the court should have inquired. And that's possible. The court could have inquired. But that's not the standard here. It's abuse of discretion. And there's real danger in inquiring because, you know, first of all, no one suggested the court should do that at the time. There was talk about whether it was equivocal, this note from the jury. But no one suggested that the court should bring the jury in and ask them whether they are truly hung or whatever else. Because that could, for example, inadvertently disclose a vote count. And then we'd have real problems. There's the United States v. Sy Chua that notes that the judge inadvertently caused the jurors to disclose the vote counts, and then it had to be reversed. Another problem is, and we talked a little bit about a second Allen charge with appellant's discussion, but really that's from Sewell. And Sewell says a second supplemental Allen charge, not counting the first one as a first Allen charge, but a second supplemental. The jury starts deliberating, and then two Allen charges. That's a problem. And, of course, if you have a situation where the judge calls the jury in and tries to inquire whether they're truly hung, and then they go and they deliberate more, and then they say, yeah, we're hung, we've got real problems again because now you've got a second Allen charge because the first one could be viewed as an Allen charge itself, just inquiring as to whether they were, you know, the true meaning of their note. So what I'm trying to suggest is, you know, these are hard decisions to make on the fly, and that's why it's an abuse of discretion standard. Alitoso, did the defense submit that instruction themselves, or did they lodge any objection to it, do you recall? You're referring to the Allen, the supplemental Allen instructions actually given? Well, I guess it's the one referred to as the 7.1, it would have been instruction 26 given as part of the 31 jury instructions. Right. I understand. My recollection is that those were all, that was agreed to by the parties. Those are just sort of the standard instructions to give. I don't recall any objection to that. Thank you. You know, and I guess the only thing left I would point to is, you know, these are, this is very different from some of the cases that defense cites in the brief. For example, Sewell, that was a modified version, not the model instruction that we're talking about here. It was read twice, supplemental read twice, two Allen supplemental instructions. It's after the judge had learned the vote counts, and the verdict was returned 15 minutes later after the second Allen charge. U.S. v. Contreras is another case that they rely on for this notion that it was premature. But again, that one also involved a modified version of the Allen instruction. There was actually no indication of a jury deadlock. It was just the court on its own decided to instruct the jury on the Allen deadlock jury concept. And the verdict there was returned 35 minutes later, and there was no intervening weekend or evening break. So unless the Court has any further questions for me, that's all I have. Thank you for your time. Okay. Thank you. Mr. Eisenberg, you've saved a minute. Thank you, Your Honor. Our point is that the circumstances both after the Allen charge was given is less important in a case like this because inherently when it is given under these circumstances, it's almost by definition inappropriate. The only reason why the jury might be said to have disregarded the overwhelming impact of it is, as we look at this record, three hours went by later on the very next day. But who is to say that during that period of time, after effectively being charged twice to come up with a verdict, the jury disregards any further deliberation among itself? And within that three-hour period of time says, we have to come up with a verdict. Most cases, I believe I'm right in this. I don't have any factual basis to support it, but when there's a hung jury, it is typically in favor of the government. Thank you, Your Honor. Thank you very much. United States v. Young is now submitted for decision. Thank both sides for their helpful arguments.
judges: Curiel, SCHROEDER, FLETCHER